# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 8, 2026

Lyle W. Cayce
Clerk

No. 23-60627

———————————

Brian Scott Berryman,

*Petitioner—Appellant*,

*versus*

Brand Huffman, *Superintendent*,

*Respondent—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:22-CV-140

———————————————————————

Before Wiener, Douglas, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

We treat the petition for rehearing en banc as a petition for panel rehearing, and it is GRANTED. The prior panel opinion, *Berryman v. Huffman*, 157 F.4th 399 (5th Cir. 2025), is WITHDRAWN, and the following opinion is SUBSTITUTED:

AFFIRMED. *See* 5th Cir. R. 47.6.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

Dana M. Douglas, *Circuit Judge*, dissenting:

Petitioner-Appellant Brian Scott Berryman was arrested in February 2017 on a two-count indictment. 1,233 days, three judges, four appointed attorneys, and five pro se motions for a speedy trial later, Berryman went to trial. The state court held a hearing on Berryman's speedy trial claim prior to trial but took an "unusual" approach by applying the speedy trial analysis separately as to each count of Berryman's two-count indictment. The result: the court found a speedy trial violation as to one count but not the other and dismissed only that count. Berryman appealed, arguing that both counts of the indictment should have been dismissed given the acknowledged violation of his right to a speedy trial. The Mississippi Court of Appeals affirmed and distinguished the Supreme Court's precedent because the Court never used the phrase "the entire indictment" when describing the dismissal remedy for speedy trial violations.

In 2022, Berryman petitioned for a writ of habeas corpus under 28 U.S.C. § 2254 in the Northern District of Mississippi. The district court denied the petition but granted a certificate of appealability on the issue of "whether a finding of a speedy trial violation requires dismissal of an indictment in whole or whether the *Barker* analysis may be conducted as to each charge separately, possibly resulting in a finding of a violation as to one charge, but not others." The rule is clearly established and has been since affirmed: the sole remedy for a violation of the speedy trial right is dismissal of the indictment. It was unreasonable for the Mississippi appellate court to then apply this rule to narrow and limit such a fundamental principle. With deep respect for the majority and the evolving outcome of this case, I dissent.

No. 23-60627

## I

I refer to the district court's factual account of the actions underlying Berryman's conviction.  I outline the relevant procedural background given its importance to the merits of both the speedy-trial and habeas analyses.

Berryman's trial did not take place for 1,233 days—the result of a series of delays that the Tishomingo Country trial court dubbed a "comedy of issues."

Although Berryman was arrested in February of 2017, he was not indicted until approximately seven months later.  On September 22, 2017, a grand jury indicted Berryman for violation of two offenses under Mississippi law: (1) shooting into a dwelling ("Count I") and (2) possession of a firearm subsequent to sustaining a felony conviction ("Count II").  Regarding Count II, the only firearm identified in the indictment was a "Marlin .22 Rifle."

Berryman would not be arraigned for another fourteen months after his indictment—on November 7, 2018—because his name was "negligently" left off the arraignment list.  Marshall Edge, a witness expected to testify in Berryman's defense, died during this delay.  It was also during this delay that Berryman filed two pro se motions seeking appointment of counsel and dismissal based on the denial of his right to a speedy trial.  At Berryman's arraignment, he was also appointed counsel, but the attorney appointed to represent him was disqualified because he had been elected to the circuit court without opposition the previous day.  The arraignment order stated that the case was "continued on motion of the Defendant and set for trial during the next regularly scheduled term."  On November 21, 2018, Berryman filed a third pro se motion requesting a trial, dismissal of the indictment, and appointment of counsel.

On January 7, 2019, the court appointed Berryman a second attorney. But the order was never filed due to a clerical error, so Berryman was never

informed of this appointment. Further, the second attorney also had a conflict because he was the district attorney who previously prosecuted Berryman for capital murder. The second attorney informed a third attorney that he would need to take over as Berryman's counsel. Berryman, however, was not informed.

Berryman filed his fourth pro se motion for a speedy trial on April 18, 2019. On June 21, 2019, the court entered a continuance order signed by the third attorney, purportedly on behalf of Berryman, but "without [his] consent." Berryman tried to appeal the continuance, but the appeal was dismissed for lack of an appealable final judgment. In October 2019, Berryman filed his fifth pro se motion seeking dismissal on grounds that his right to a speedy trial had been violated.

Between September 2019 to April 2020, the assigned trial judge was unavailable, and a second trial judge entered an order that cancelled the January 2020 term of court for Tishomingo County. Berryman filed a motion requesting that the second judge to recuse himself since he had previously prosecuted Berryman for robbery. The motion was granted.

A third trial judge ruled on some of Berryman's pro se motions, including the appointment of counsel on March 16, 2020. Because Berryman had been provided appointed counsel "since his arraignment" but there was no actual order on record, the judge entered an order appointing the third attorney nunc pro tunc. In April 2020, Berryman filed a mandamus petition requesting that the Mississippi Supreme Court order the trial court to rule on his October 2019 motion to dismiss. The trial court set a hearing for the motion, and the Mississippi Supreme Court dismissed the mandamus petition. Days before the hearing, the trial court appointed Berryman a fourth attorney, as the third attorney was elected to the Mississippi Senate.

At the motion to dismiss hearing, Berryman alleged that his right to a speedy trial had been violated given the various continuances and highlighted that he had lost a defense witness in the process. Berryman submitted Edge's obituary and stated that a neighbor claimed Edge intended to testify that Berryman did not have a gun when he walked to Thacker's trailer the second time. Berryman further asserted that the signatures on the waiver of rights and written statement, which the State claimed he had signed, were not his signatures and misspelled his name as "Bryan" instead of "Brian."

The state court analyzed Berryman's speedy trial claim under the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). After treating the first three *Barker* factors as one analysis for all counts, the court evaluated the fourth *Barker* factor—prejudice—separately for each count of the indictment. Specifically, the state court evaluated the relevance of Edge's potential testimony for Berryman's defense for each count in the indictment. Finding that there had been a speedy trial violation for Count I, but not for Count II, the court dismissed only Count I of the indictment.

At trial, the jury found Berryman guilty of Count II. The court sentenced him as a violent habitual offender to life imprisonment with no eligibility for parole.

On direct appeal, Berryman contended that Count II of the indictment should have been dismissed alongside Count I given the acknowledged violation of his right to a speedy trial. But the Mississippi Court of Appeals affirmed. *Berryman v. State*, 337 So. 3d 1116 (Miss. Ct. App. 2021). The court held that because Berryman's speedy trial right had been impaired as to Count I only, the trial court was correct to dismiss only that count considering the ad hoc balancing process mandated by *Barker*. *Id.* at 1134.

No. 23-60627

Judge McCarty dissented. The speedy trial right, he urged, did not allow the state court to conduct a count-by-count analysis of the speedy trial violation or dispense the remedy in a similarly piece-meal fashion. *Id.* at 1139–42. In Judge McCarty's view, there is a singular remedy when there is a speedy trial violation—dismissal of the indictment. *Id.* at 1139 (McCarty, J., dissenting) (citing *Barker*, 407 U.S. at 522). To do otherwise, even when a defendant is charged in a multi-count indictment, is to "craft[] an 'intermediate remedy' of carving off one charge from multiple." *Id.* at 1140–41.

Berryman appealed to the Mississippi Supreme Court and the United States Supreme Court but both requests were denied.

On September 28, 2022, Berryman filed a petition for habeas corpus under 28 U.S.C. § 2254 in the Northern District of Mississippi, asserting several grounds for relief, including that the state court's conclusion that there was a speedy trial violation warrants dismissal of the entire indictment and holding otherwise was an unreasonable application of federal law. The district court denied the petition. However, the district court granted a certificate of appealability ("COA") on the issue of "whether a finding of a speedy trial violation requires dismissal of an indictment in whole or whether the *Barker* analysis may be conducted as to each charge separately, possibly resulting in a finding of a violation as to one charge, but not others."

Berryman timely appealed.

II

Because the Court of Appeals of Mississippi rejected Berryman's claims on the merits, our court can only grant federal habeas relief if that court's adjudication:

6

No. 23-60627

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.§ 2254(d); *see Andrew v. White*, 145 S. Ct. 75, 80 (2025) (per curiam). Berryman seeks habeas relief using the first route.

In the context of § 2254(d)(1), "clearly established federal law" consists of the "governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Poree v. Collins*, 866 F.3d 235, 246 (5th Cir. 2017) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)). The Court has explained that this "refers to the holdings, as opposed to the dicta," of its decisions. *Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) hold "independent meaning." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); *accord Dorsey v. Stevens*, 720 F.3d 309, 314 (5th Cir. 2013). Whereas a state court renders a decision "contrary to" clearly established federal law when it "applies a rule different from the governing law set forth in [Supreme Court] cases, or . . . decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts," a state court's decision constitutes an "unreasonable application" of clearly established federal law when it "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

7

III

A

I begin by identifying the relevant clearly established federal law at the time of the Mississippi appellate court's decision. *See Poree*, 866 F.3d at 246. Citing *Barker v. Wingo*, and *Strunk v. United States*, Berryman argues that it was clearly established that a speedy trial violation compels dismissal of the entire indictment.

In *Barker*, the petitioner was not tried for murder until more than five years after his arrest, during which time the prosecution obtained just shy of twenty continuances for reasons that ranged from the prosecution's interest in trying Barker's alleged accomplice first, to the illness of a key prosecution witness. 407 U.S. at 517–19. Barker, however, did not lodge his first objection to these continuances until over three years after his arrest. *Id.* at 517–18. When he was finally tried, he was convicted and sentenced to life in prison. *Id.* at 518. Barker appealed his conviction to the state court of appeals, asserting, inter alia, a speedy trial violation. *Id.* Following that court's affirmance, he petitioned for habeas corpus relief in federal court. *Id.* The district court rejected the petition, and the Sixth Circuit affirmed. *Id.* The Sixth Circuit concluded that Barker had waived his right to a speedy trial for the period prior to his objection. The court further held that he had not been prejudiced by the delay for the period between his first objection and trial, as that period of time was not unduly long, and the illness of a key witness was a valid justification for delay. *Id.* at 518–19.

The Supreme Court granted certiorari in *Barker* to define the criteria by which courts should determine whether a speedy trial violation occurred. *Id.* at 516. The parties each offered some variation of an inflexible waiver rule that placed the onus on either the prosecution to offer, or the defendant to demand, a speedy trial. *See id.* at 523–24. Recognizing that the speedy trial

right is different from other constitutional rights, particularly as it concerns courts' ability to discern precisely when the right has been denied, the Court rejected both rigid proposals. *See id.* at 522–29. Instead, it held that the "slippery" nature of the speedy trial right means that "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Id.* at 522 (citing *Beavers v. Haubert*, 198 U.S. 77 (1905)).

Thus, the Court announced a four-factor balancing test for assessing speedy trial violations that weighs the conduct of both the prosecution and the defendant with regard to: (1) the length of delay, (2) the government's reason for delay, (3) the defendant's responsibility to assert his right, and (4) prejudice to the defendant. *Id.* at 530–32. Prejudice, the Court held, must be assessed with due consideration of the interests that the speedy trial right was designed to protect—preventing oppressive pretrial incarceration, minimizing anxiety of the accused, and limiting the possibility that the defense will be impaired. *Id.* at 532. Still, the Court emphasized that no factor was "talismanic" in this difficult balancing process. *Id.* at 533. It then directed courts seeking to apply its holding to consult *United States v. Mann*, 291 F. Supp. 268, 269, 275 (S.D.N.Y. 1968). *See Barker*, 407 U.S. at 533 n.36. There, a defendant charged in a five-count indictment was not set to be tried until nine years after he was indicted. *Mann*, 291 F. Supp. at 269. Prior to trial, the defendant moved to dismiss the indictment on the basis that he was deprived of his right to a speedy trial. *Id.* The district court, applying Second Circuit precedent, weighed four slightly different factors to determine

No. 23-60627

whether the defendant's speedy trial right had been violated.[1] Upon finding a speedy trial violation, the court dismissed the indictment. *Id.* at 275.[2]

While *Barker* prescribed a functional lens to determine the existence of a speedy trial violation, it explained that "[t]he amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived." *Barker*, 407 U.S. at 522. Comparing dismissal to the exclusionary rule or reversal for a new trial, the Court acknowledged its severity but maintained that "it is the only possible remedy." *Id.*

The Court reiterated the inflexibility of the dismissal remedy in *Strunk v. United States*, 412 U.S. 434 (1973). There, none disputed that the defendant's speedy trial right had been violated. *Id.* at 435. But the Seventh Circuit declined to dismiss the indictment because the defendant did not challenge the sufficiency of the evidence or assert any prejudice in presenting his defense. *Id.* at 438. Instead, the court provided a "practical remedy" by remanding the case with instructions to reduce the defendant's sentence by the period of the unconstitutional delay. *Id.* The Supreme Court reversed. Although it agreed with the Seventh Circuit that *Barker* requires flexibility and practicality, the Court held "that aspect of the holding in *Barker* was directed at the process of determining whether a denial of speedy trial had occurred; it did not deal with the remedy for denial of this right." *Id.* Given

_____

[1] At the time of the *Mann* decision, the Second Circuit instructed courts to consider "the length of delay, the reason for delay, the prejudice to the defendant, and waiver by the defendant." 291 F. Supp. at 269–70 (citation modified).

[2] The State argues *Mann* is distinguishable because the court found a speedy trial violation on "each count." This argument is unpersuasive and appears to be working backwards from the conclusion in *Mann* when the court dismissed the entire indictment. But the court did not go count by count on the speedy trial analysis to hold that the right had been violated. Instead, the court applied the analysis holistically.

that Strunk's right to a speedy trial was violated, the Seventh Circuit was not at liberty to fashion "less drastic" relief. *Id.* Instead, "dismissal . . . remain[ed], as *Barker* noted, 'the only possible remedy.'" *Id.* at 440 (quoting *Barker*, 407 U.S. at 522). As explicated by the Supreme Court in *Strunk*, *Barker* requires that, upon finding a speedy trial right violation, the indictment must be dismissed.

From *Barker* and *Strunk,* the rule is clear that when it comes to the speedy trial right, courts must engage in a fact-intensive balancing test that reflects the nebulous nature of the right to determine whether it is has been violated. *See Barker*, 407 U.S. at 521–22. But once it is determined that a violation has occurred, courts have no choice of remedy and must dismiss the indictment. *See Strunk*, 412 U.S. at 440; *Barker*, 407 U.S. at 522.

B

The Court of Appeals of Mississippi determined that, despite *Barker*'s holding that "dismissal of the indictment" is the "only possible remedy," the state trial court's dismissal of only one count was proper because *Barker* "never used the phrase 'the entire indictment,'" nor did it consider multi-count indictments. *Berryman*, 337 So. 3d at 1133. The court further determined that dismissal count-by-count was consistent with *Barker*'s instruction that the speedy trial right be assessed on an ad hoc basis. *Id.* at 1133–34. When a defendant has not been deprived of his speedy trial right to a particular count, the court concluded there was no legal basis to grant the remedy of dismissal. *Id.* at 1134.

In *White v. Woodall*, 572 U.S. 415, 426 (2014), the Supreme Court squarely rejected the proposition that a federal habeas court may fault a state court for failing to extend a legal rule. Rather, the Court held that "'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the

state-court decision.'" *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)). At the same time, the Court acknowledged that § 2254(d)(1) does not bar relief under the "unreasonable application" clause merely because a petitioner's facts are not identical to those of the governing Supreme Court caselaw. *Id.* at 427. For certain "fundamental" principles, "when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." *Id.* (citation modified). Under these circumstances, a state court's decision constitutes an "unreasonable application" if the application of the rule is beyond "fairminded disagreement." *Id.* (citation modified). The possibility of fairminded disagreement turns on the specificity of the rule to be applied. As the Court explained in *Yarborough v. Alvarado*:

> If a legal rule is specific, . . . [a]pplications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

541 U.S. at 664 (citation modified).

Pursuant to this standard, and the principles established by *Barker* and *Strunk*, Berryman is entitled to relief. The parties do not dispute that Berryman was denied his right to a speedy trial, at least with regard to Count I of the indictment. Consequently, any remedy short of dismissal of the indictment contravenes the Supreme Court's holdings which require the unyielding and severe remedy of dismissal of the indictment upon finding a speedy trial right violation. *See Strunk*, 412 U.S. at 440; *Barker* 407 U.S. at 522; *see also Goodrum*, 547 F.3d at 257 ("A violation of the speedy trial right,

if found, requires dismissal of the indictment." (citing *Strunk*, 412 U.S. at 439–40)).

As to whether *Barker* was decided with multiple counts in mind, *Barker* held that the remedy for a speedy trial right violation is dismissal of the indictment—not the count or charge. And as a charging instrument, an indictment may include multiple counts. The State's argument boils down to the fact that the indictments in *Barker* and *Strunk* are not identical. But § 2254(d)(1) does not demand an exact factual match in order for a state court decision to constitute an unreasonable application of a Supreme Court decision. *See White*, 572 U.S. at 427 (holding that § 2254(d)(1) does not "require[] an identical factual pattern before a legal rule must be applied" (citation modified)). The relevant question is whether, even on slightly different facts, there could be no fairminded disagreement.[3] *See id.*

I would find that there could be no fairminded disagreement as to whether *Barker* applies to multi-count indictments as well as single-count indictments for two reasons.

First, *Barker* instructed courts seeking to apply its holding to consult *Mann*, wherein a court dismissed a multi-count indictment after finding that the defendant's speedy trial right had been violated. In *Barker*'s wake, our court heeded this instruction and granted habeas relief after applying *Barker* to a multi-count-indictment case. *See Prince v. State of Ala.*, 507 F.2d 693,

---

[3] The State argues the sheer number of judges that reached a different conclusion shows there is "fairminded disagreement" on whether there is clearly established law as to multi-count indictments, such that relief is foreclosed under the AEDPA. This is incorrect—the Supreme Court has cautioned us against this argument in that it transforms an objectively reasonable analysis into a subjective one, and it identified our court's precedent as an example. *Williams v. Taylor*, 529 U.S. 362, 410 (2000) ("For example, the Fifth Circuit appears to have applied its 'reasonable jurist' standard in just such a subjective manner.") (discussing *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996)).

701 n.5 (5th Cir. 1975). In the same vein, Supreme Court decisions distilling *Barker*'s rule regarding the remedy do not recognize it as providing for the dismissal of an individual count or charge. *See, e.g.*, *Betterman v. Mont.*, 578 U.S. 437, 444 (2016) ("The sole remedy for a violation of the speedy trial right—dismissal of the *charges*—fits the preconviction focus of the Clause." (citation modified)); *id.* at 445 n.6 ("We have not read the Speedy Trial Clause . . . to call for a flexible or tailored remedy. Instead, we have held that violation of the right demands termination of the *prosecution*.") (emphasis added); *United States v. Loud Hawk*, 474 U.S. 302, 317 (1986) (applying *Barker* to a multi-defendant, multi-count-indictment case to conclude that the delay asserted by the defendants "do not justify the severe remedy of dismissing *the indictment*.") (emphasis added).

Second, and perhaps most prohibitive to finding that the state court was reasonable in declining to dismiss the indictment, is the inflexible nature of the remedy of dismissal. The State hangs its hat on *Barker*'s endorsement of flexibility for assessing speedy trial claims, but this conflates the method for discerning whether the speedy trial right has been violated with the remedy for a violation of that right. The Supreme Court clarified in *Strunk*, that *Barker* set forth a process for discerning a speedy trial violation that was distinct from the remedy for such a violation. And unlike the balancing test for determining a violation of the speedy trial right, which "demand[s] a substantial element of judgment,"[4] the remedy of dismissal of the indictment is a specific legal rule. *Yarborough*, 541 U.S. at 664. The Supreme Court reversed the Seventh Circuit in *Strunk* for failure to provide the "only possible remedy" of dismissing the indictment, *Strunk*, 412 U.S. at 440

---

[4] Our court has previously acknowledged that our ability to grant habeas relief based on a state court's application of the balancing test is limited, given the test's malleable nature. *See Goodrum*, 547 F.3d at 257.

14

(quoting Barker, 407 U.S. at 522), demonstrating that courts applying *Barker* have "less leeway . . . in reaching outcomes in case-by-case determinations" when deciding on the remedy for a speedy trial violation, *Yarborough*, 541 U.S. at 664. Thus, it was not within the realm of fairminded disagreement to decline to dismiss the indictment upon finding that Berryman's speedy trial right had been deprived. *See Strunk*, 412 U.S. at 440 (holding that the indictment must be dismissed "[g]iven the unchallenged determination that petitioner was denied a speedy trial").

Because *Barker*'s flexibility license stops at the remedy, when the balancing test reveals a speedy trial violation, the indictment must be dismissed. *See id.* This the state court did not do.

*      *      *

It was an unreasonable application of *Barker* and its progeny for the state court, upon finding a speedy trial violation, to dismiss one count, rather than the indictment. Berryman is therefore entitled to relief and I respectfully dissent.